# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RICKY R. FRANKLIN,

     Plaintiff,

v.

HOLLIS COBB ASSOCIATES, INC.,

     Defendant.

Case No.  1:21-cv-02075-SDG

Honorable Judge: Steven D. Grimberg

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, HOLLIS COBB ASSOCIATES, INC., ("HCA"), through its undersigned counsel, submits the following Memorandum of Law in support of its Motion for Summary Judgment.

## INTRODUCTION

Plaintiff, Ricky Franklin ("Plaintiff" or "Franklin") claims HCA violated sections 227(a)(1) and 227(b)(1) of the Telephone Consumer Protection Act (TCPA"). Specifically, Plaintiff's only claim alleges that HCA violated the TCPA by placing calls to his cellular telephone using "automatic telephone dialing systems" ("ATDS") and "artificial/pre-recorded messages," without his prior express consent. First, Defendant did not call Plaintiff's telephone or leave messages without his prior express consent. In particular, on September 21, 2016, Plaintiff visited Northside Family Practice and Hospital (the

"creditor"), where he provided information, signed, and represented acknowledgement of the creditor's billing practices. Plaintiff authorized contact for reasons related to the services he received. Second, Plaintiff did not revoke his given consent to receive calls from HCA regarding the Debt.

Third, Defendant manually dialed Plaintiff's number and an agent briefly connected directly with him in July of 2017. Defendant did not call Plaintiff's telephone with an ATDS or artificial or prerecorded voice, especially without consent. Fourth, Plaintiff has failed to establish that HCA used an autodialer system to communicate with him, nor has he provided any evidence to substantiate the allegations in his Complaint. Plaintiff has also failed to disclose an expert who can opine on HCA's telephone equipment, or provide any evidence to support whether such equipment constitutes an ATDS. Lastly, Defendant could not have knowingly or willfully violated the TCPA when it manually dialed Plaintiff's number, contrary to the allegations in his Complaint.

Therefore, Plaintiff's claims that HCA violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, fail as a matter of law.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 17, 2021, Plaintiff filed the instant lawsuit (Dkt. #1; #2). On June 9, July 12, and July 26, Defendant filed three motions respectively, requesting extensions of time to file a response to Plaintiff's Complaint. (Dkt. #5; #9; #11). Defendant subsequently filed its Answer and Affirmative Defenses to Plaintiff's Complaint, on August 9, 2021. (Dkt.

#13). Following, pursuant to Federal Rule of Civil Procedure 26(f), the parties conferred regarding a discovery plan, and Defendant filed, with Plaintiff's consent, a Joint Preliminary Report and proposed discovery plan for the Court's approval (Dkt. #14).

Pursuant to the Court's scheduling order and the Local Rules, the parties' discovery timeline was set to expire on January 6, 2021. In response, both parties served their Initial Disclosures upon each other, with Plaintiff filing on September 17, 2021 and Defendant tendering its disclosures on November 8, 2021. However, Plaintiff failed to serve any discovery requests upon Defendant or communicate his intent to seek an extension of time. Specifically, Plaintiff has not attempted any communications via email, mail, CM/ECF, or otherwise to Defendant or to the Court, regarding his interest and intent or lack thereof in pursuing discovery and the continued litigation of this action.

Defendant now brings the instant action, pursuant to the Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby moving for summary judgment be entered in its favor and against Plaintiff.

## STANDARD OF REVIEW

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

3

issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party may meet its burden for summary judgment merely by showing an absence of evidence to support an essential element of the nonmoving party's case. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). After the moving party has satisfied its burden, the burden shifts to the non-movant to present specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant must show more than "a mere scintilla of evidence" to defeat summary judgment. See *Nebula Glass Int'l, Inc. v. Reinhold, Inc.*, 454 F.3d 1203, 1210 (11th Cir. 2006). Summary judgment is still appropriate even if the non-movant presents evidence that is "merely colorable" or "not significantly probative." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014).

## **ARGUMENT**

The TCPA, as set forth in 47 U.S.C. § 227(b)(1), provides in relevant part as follows:

> (1) It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

4

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B);

47 U.S.C. § 227(b)(1).

To establish a violation of the TCPA, a plaintiff must prove: (1) the defendant called a cellular telephone; (2) using an ATDS or prerecorded message or artificial voice; (3) without the prior consent of the recipient. *Coleman v. Rite Aid of Ga., Inc.*, 284 F. Supp. 3d. 1343, 1345-6 (N.D. Ga. 2018) (citing *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d. 1251, 1253 (M.D. Fla. 2012); *Weed v. SunTrust Bank*, No. 1:17-cv-3547, 2018 U.S. Dist. LEXIS 76234 (N.D. Ga. May 3, 2018) (citing 47 U.S.C. § 227(b)(1)(A)(iii)). Here, Plaintiff cannot meet this required burden.

A. **The Court Should Grant Summary Judgment in Favor of Defendant Because Plaintiff Gave Prior Express Consent to Receive the Calls at Issue.**

The TCPA only bars calls to cellular telephones made using an ATDS without the consent of the recipient. With this understanding, Plaintiff does allege that he "never consented to, requested, or otherwise desired or permitted, calls from HCA, on behalf of any other third party for the purpose of debt collection or any other purpose." (Pl.'s Compl. ¶ 19). The Court should grant summary judgment in favor of Defendant because, put simply, HCA did not violate Section § 227(b)(1) of the TCPA—as a matter of law and undisputed fact—because Plaintiff gave his prior express consent to receive the calls at

issue, when he provided his 3733 number to the creditor, and when he agreed that the creditor, its affiliates, and/or approved business associates—which includes Defendant—could contact him regarding collection of any outstanding payments for services rendered.

The Eleventh Circuit has determined that "if a person knowingly releases his phone number, calls are permitted because the called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications." *Patterson v. Ally Fin., Inc.*, No. 3:16-cv-1592, 2018 U.S. Dist. LEXIS 15203, at *6 (M.D. Fla. Jan. 31, 2018) (citing *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1118 (11th Cir. 2014). The provision of one's phone number to a creditor, reasonably evidences prior express consent by the phone subscriber to be contacted at that number regarding the debt. *Id*. This Court has already held that Plaintiff gave prior express consent to receive calls from the creditor and its affiliates, which includes HCA.

On September 21, 2016, as a part of his service experience through Northside Hospital, Plaintiff executed a financial acknowledgement form or notice (the "Notice"), providing his telephone number and agreeing to the following conditions:

> "I authorize Northside Hospital, or any of its affiliates, contractors or business associates, to contact me by any telephone numbers, email addresses or other contact points provided by me or on my behalf) by the use of any automatic dialing system, by pre-recorded forms of voice/messaging systems, by electronic mail owned or used by the guarantor/responsible party, by telephone or by cell phone for reasons related to the services I received at Northside Hospital or payment for the services I received at Northside Hospital, including but not limited to,

6

debt collection purposes. I further understand and acknowledge that my consent in receiving the aforementioned communications is not required nor is it a preceding condition to receive health care services at Northside Hospital."

Exhibit 1.

The Notice, which Franklin executed, afforded him the opportunity to either (1) authorize and consent to, or (2) decline providing his consent to be contacted. The decline option, stated:

"I do not agree with the above statement and do not wish to be contacted by the use of any automatic dialing system; by pre-recorded forms of voice/messaging systems; by electronic mail or by receiving voice messages on my cell phone, except for clinical issues."

Exhibit 1.

Plaintiff had equal latitude to decline extending consent, but instead, he willingly executed the consent option 1. In doing so, he plainly and explicitly agreed to the contact he now finds to be at issue in the instant matter.

Even further, Plaintiff once again executed acknowledgement in a separate section within the Notice, submitting that "By signing below, I acknowledge and agree that I have read or had this form read to me and I understand and agree to its contents." Each of the above ways—taken individually (much less together)—sufficiently establish Plaintiff provided prior express consent to receive the calls, and cannot now claim that HCA violated the TCPA by seeking to contact him without prior given consent. In fact, the Eleventh Circuit has entered judgment in favor of defendants on TCPA claims of similar facts and issues as here, finding that summary judgment was appropriate on

7

defendants' prior express consent defense. *See Mais.*, 768 F.3d 1110, 1123 (11th Cir. 2014) (granting summary judgment precisely because the calls to Plaintiff fell within the TCPA prior express consent exception as interpreted by the FCC, and explaining that the Federal Communications Commission ("FCC") made clear, consent to be called at a number in conjunction with a transaction extends to a wide range of calls regarding that transaction, even in at least some cases where the calls were made by a third party, and provided recognition of consent obtained and conveyed by an intermediary, to strongly support the court's conclusion that in this case, plaintiff's wife provided the cell phone number to the creditor through the Hospital).

**B.  The Court Should Grant Summary Judgment in Favor of Defendant Because Plaintiff Did Not Revoke Consent to Be Called at the 3733 in Question.**

Plaintiff did not properly revoke consent to be called, and as a result, the phone calls placed to his 3733 Number were not in violation of the TCPA. In the absence of specification, the FCC may provide guidance as to the interpretation of revocation. *Morris v. Ocwen Loan Servicing*, No. 14-62126-CIV-ZLOCH, 2015 U.S. Dist. LEXIS 117042, at *6 (S.D. Fla. Aug. 24, 2015), As an initial matter, the standard for whether revocation is successful is whether the revocation "clearly expresses a desire not to receive further messages." 30 FCC Rcd. 7961, 7996 (2015). Congress has conferred upon the FCC general authority to make rules and prescribe regulations necessary to implement or carry out the provisions of the TCPA. *Murphy v. DCI Biologicals Orlando, Ltd. Liab. Co.*, 797 F.3d 1302, 1305 (11th Cir. 2015); *Mais*, 768 F.3d 1110, 1117 (11th Cir. 2014). Moreover, consumers may

8

revoke consent, using any reasonable method, including orally or in writing. *Morris*, 2015 U.S. Dist. LEXIS 117042, at *7-8 (S.D. Fla. Aug. 24, 2015). (reasoning that consumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, finding that in these situations, callers typically will not find it overly burdensome to implement mechanisms to record and effectuate a consumer's request to revoke his or her consent). *Id*. Here, Franklin did not expressly revoke consent to be called, either in writing or orally prior to August 25, 2017 when Defendant received letter correspondence from him. *See* Exhibit 3.

Furthermore, HCA maintains records of Plaintiff's account notes, and communications resulting from placement of the account by the creditor. According to the account notes and call records, on July 14, 2017, Plaintiff received a single call from Defendant, the only communication during which Plaintiff spoke with Defendant directly, based on the prior given consent. *See* Exhibit 2. Defendant's records verify that during this call, Plaintiff was asked about the balance in full ("BIF") on his outstanding obligation, to which he hung up ("HU"). Conversely, according to his Complaint, Plaintiff purports to have "informed the representative to not call his cellphone and further, [he] does not owe a debt to this company." (Pl.'s Compl. ¶ 8). In the alternate event that plaintiff alleges he revoked consent during this July 2017 call, the account notes do not reflect any oral revocation made by Franklin, nor that he expressed a desire not to receive further messages as he alleges in the instant Complaint. Under Eleventh Circuit

1042458\310046406.v1

precedent, the TCPA requires—at a minimum—express and clear revocation of consent; implicit revocation will not do. *Welch v. Green Tree Servicing, LLC (In re Runyan)*, 530 B.R. 801, 807 (Bankr. M.D. Fla. 2015). At minimum, Plaintiff hanging up does not constitute a sufficient enough oral expression of his consent being revoked.

In *Welch v. Green Tree Servicing, LLC*, 530 B.R. 801, 804 (M.D. Fla. 2015), the borrowers told their loan servicer that they would not be able to settle the debt and that they could contact their attorney with any further questions. The borrowers argued that this revoked consent to be called, and the servicer violated the TCPA for its continued calls. *Id*. The Court rejected this argument, holding that, the TCPA requires at a minimum, express and clear revocation of consent. "Implicit revocation will not do." *Id.* at 807. It concluded that oral revocation requires "a measure of clarity, which the [borrowers] have not shown." *Id*. Similarly, Plaintiff has fallen short of demonstrating either through correspondence or other evidence, that he revoked consent. Additionally, per HCA's policies and practices, any revocation made during prior consented contact such as a call, as in this circumstance, demands that the request be documented and the account be shut down.

Hence, upon receipt of Plaintiff's demand letter on August 25, 2017, communicating his intent to litigate, HCA immediately placed the account under compliance review for shut down, per its policies and practices. Effectively, HCA understood and interpreted Plaintiff's demand letter as a clear expression and desire not

1042458\310046406.v1

to be further contacted regarding the outstanding Debt, to which it fully complied. Thus, Plaintiff has failed to establish a violation of the TCPA as alleged in his single count Complaint.

Similarly, in *Cesaire v. Medical Services*, the plaintiff told the caller in response to their inquiry about a balance on his account, "If you don't have—if you can't give the information, don't call my phone. Thank you," and proceeded to end the call. No. 6:15 cv 1886, 2016 U.S. LEXIS 162615, at *15 (M.D. Fla. Nov. 23, 2016). The court reasoned that this was not, in no uncertain terms, a clear and unequivocal revocation of consent because the statement amounted to a "conditional directive" rather than a "clear expression of a desire not to be called again." *Id*. Here, Plaintiff's Complaint alleges that when he "answered the phone and was told by the representative that they were trying to collect a debt," he stated that he "has never heard of the Company, and informed to representative to not call his cellphone, and further, [he] does not owe a debt to this company." (Pl.'s Compl. ¶ 7-8). In contrast, Defendant's records verify that on July 14, 2017, in response to their call inquiring about the Debt, Plaintiff also ended the call, giving no clear and unequivocal indication, in no uncertain terms, that he was revoking his consent. Outside of simply hanging up the call, if Plaintiff alleges he expressed revocation during the call, it was inherently ambiguous. According to HCA's records, there is no indication that he specified or made known that he did not wish to be called in the future.

In sum, Plaintiff executed acknowledgement to be contacted for reasons related to the services he received at Northside Hospital. He did not expressly revoke consent to be called at a latter period, prior to August 25, 2017.

## C.  Plaintiff Failed To Produce Any Evidence Showing That HCA Contacted Him Using An Automatic Telephone Dialing System

The TCPA's definition of an ATDS states that it is "equipment which has the capacity (1) to store or produce telephone numbers to be called, using a random or sequential number generator; and (2) to dial such numbers." 47 U.S.C. § 227(a)(1). The scope of what constitutes an ATDS has evolved over time, culminating in major decisions including *ACA Int'l v. FCC*, 435 U.S. App. D.C. 1, 885 F.3d 687 (2018), and most recently *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021).

First, there is no dispute that Plaintiff consented to receiving automated telephone calls from Defendant, despite the Complaint's allegations to the contrary. Notwithstanding this, to consider an alternate instance wherein Plaintiff never provided his consent to the creditor and its affiliates, contractors, and business partners—which include HCA, his claims must still fail because he did not and has not produced any evidence showing that he was contacted by the use of an automatic telephone dialing system as defined by the TCPA. It is the plaintiff's burden to establish that a call was made using an ATDS. *Dotson v. Dish Network L.L.C.*, No. 2:19-CV-21, 2020 U.S. Dist. LEXIS 48783, at *8 (S.D. Ga. Mar. 19, 2020) (citing *Musenge v. SmartWay of the Carolinas, LLC*, NO.

12

3:15-cv-153, 2018 U.S. Dist. LEXIS 158044, at *7 (W.D.N.C. Sept. 17, 2018) (underscoring the plaintiff's burden to allege the use of an ATDS by the defendant); see also *San Pedro-Salcedo v. Haagen-Dazs Shoppe Co.*, No. 5:17-cv-03504, 2019 U.S. Dist. LEXIS 208228, at *15 (N.D. Ca. Dec. 3, 2019) (finding that whether defendant used an ATDS was a significant part or essential element of the plaintiff's case, and she carries the ultimate burden of affirmatively proving the defendant used an ATDS).

In *ACA Int'l v. FCC,* the D.C. Circuit rejected the FCC's expansive notion of what constitutes an ATDS under the TCPA. The court reviewed the FCC declaratory ruling about what forms of automated dialing equipment are subject to the TCPA's restrictions on unconsented calls. 435 U.S. App. D.C. 1, 885 F.3d 687 (2018).  In response, it concluded that "we set aside the Commission's explanation of which devices qualify as an ATDS." *Id*. at 695. It held that the Commission's broad interpretation of "capacity" resulted in overly expansive outcomes where any device is deemed an ATDS regardless of whether autodialer features are used to make a call. *Id*. at 704. "Those sorts of anomalous outcomes are bottomed in an unreasonable, and impermissible, interpretation of the statute's reach." *Id*. at 697.

Following *ACA Int'l*, the definition of an ATDS is effectively stripped to its plain language, and requires the equipment at issue to generate random or sequential numbers to be dialed, and to dial them. See also *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) (affirming summary judgment for defendant where "[plaintiff] cannot point to any

13

evidence that creates a genuine dispute of fact as to whether the [system] had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers."); *Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1160 (N.D. Ill. 2018) (holding that the system did not have the capacity to generate random or sequential numbers to be dialed, but instead pulled numbers from a stored list that was not generated at random, hence not an ATDS).

In the most recent decision by the Supreme Court of the United States, *Facebook, Inc. v. Duguid*, resolved fully, any conflict among the courts regarding the use of an autodialer. The Court concluded that Facebook did not violate the TCPA because the definition of an autodialer required that in all cases, whether storing or producing numbers to be called, the equipment in question had to use a random or sequential number generator, which petitioner's did not. 141 S. Ct. 1163, 1165 (2021). "The statutory context confirms that the autodialer definition excludes equipment that does not use a random or sequential number generator…Expanding the definition of an autodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw to these nuanced problems when Congress meant to use a scalpel." *Id*. at 1171. Thus, as the Supreme Court concluded, a necessary feature of an autodialer under §227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called. *Id*. at 1173.

1042458\310046406.v1

Here, plaintiff has failed to establish or provide any evidence proving HCA's use of autodialer equipment as defined by the Supreme Court. Furthermore, HCA's records verify that on July 14, 2017 when the call was placed to Plaintiff's 3733 number, Defendant did so by manually dialing the number in question, followed by the brief conversation with Plaintiff, during which he hung up. In light of the narrowed view of what constitutes an automatic dialing system in the wake of *ACA Int'l* and *Facebook, Inc.*, courts have consistently determined that plaintiffs must show that the dialing system at issue could either randomly or sequentially generate numbers and then dial those numbers. Franklin cannot make such a showing in this case. Additionally, TCPA plaintiffs typically employ the use of experts testimony concerning the technical aspects of a dialing system, to establish that defendants' use falls under the statute. Plaintiff has furthermore failed to present any evidence of expert testimony, to indicate or opine upon HCA's alleged use of an autodialer to place the calls at issue.

Plaintiff cannot meet his burden of showing that the dialing system used in this case was an automatic dialing system under the statute because there is no evidence about the system's capabilities. Both parties issued initial disclosures and Defendant disclosed a corporate representative. However, Franklin did not depose the corporate representative about the dialing system in this case, did not seek information about the system's ability to generate random or sequential numbers and then to dial them, and did not seek to have the system personally inspected or tested. More, Franklin did not

identify or produce any qualified expert to proffer testimony or evidence about the system's capabilities, or issue any discovery requests in this case. That a dialing system is an automatic telephone dialing system under the statute is an element of a TCPA claim, and here, Plaintiff cannot establish that the system in this case qualified as one, to satisfy his burden proof.

In addition, he may not seek to avoid summary judgment by claiming a material dispute of fact exists as to whether an ATDS was used. Courts "must grant summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Kol B'Seder, Inc. v. Certain Underwriters at Lloyd's of London*, 766 F. App'x 795, 802 (11th Cir. 2019) (quoting *Celotex*, 477 U.S. at 322). As it is Plaintiff's burden to prove HCA used an ATDS, and Plaintiff has failed to disclose any evidence to support his claims, he cannot create a material dispute of fact solely by the lack of testimony.

Despite this, Defendant has fully established that calls placed to Plaintiff's telephone number were pursuant to his prior express consent, given on September 21, 2016. Thus, judgment should properly be entered in HCA's favor.

**D. The Dialing System Used In This Case Was Not An Automatic Telephone Dialing System**

The dialing system in this case was not an automatic dialer as defined by the statute. HCA's records and call log verify that the July 2017 call to Plaintiff's 3733 number

16

was manually dialed. It does not reflect that Franklin was called using an ATDS, nor that the telephone number which HCA received from the creditor upon placement of the account, was generated randomly or sequentially to be dialed by an autodialer.

Moreover, the Commission has also addressed the precise functions a device must have the capacity to perform for it to be considered an ATDS, affirming that the "basic functions of an autodialer are to dial numbers without human intervention." 30 FCC Rcd 7961, 7974 (F.C.C. July 10, 2015). Nothing in the TCPA prevents callers from manually dialing. *Id. ACA Int'l* recognized and more fully adopted this rule, interpreting the TCPA to exclude equipment requiring human intervention to dial, from the statutory definition of ATDS. "That makes sense given that auto' in autodialer—or, equivalently, 'automatic' in 'automatic telephone dialing system,' []—would seem to envision **non-manual dialing** of telephone numbers. 435 U.S. App. D.C. 1, 885 F.3d 687, 703 (2018). (emphasis added.)

The Northern District of Georgia itself, has analyzed this issue, considering what constitutes an ATDS, and finding that where a system requires an agent or representative to manually click on or enter a telephone number to initiate a call, this requires human intervention not within the definition of an ATDS under the TCPA. See *Maddox v. CBE Grp., Inc.*, 2018 U.S. Dist. LEXIS 88568, at *11 (N.D. Ga. May 22, 2018) (All of the calls made to plaintiff were done through defendant's Manual Clicker Application, a system which requires human intervention to manually "click" initiate a call. "Additionally, the system does not use any kind of predictive or statistical algorithm to engage in predictive dialing.

17

Case 1:21-cv-02075-SDG   Document 19-2   Filed 02/07/22   Page 18 of 22

For these reasons, it does not qualify as an ATDS, and Defendant is entitled to summary judgment on Plaintiff's TCPA claim."); *Strauss v. CBE Grp., Inc.*, 173 F. Supp. 3d 1302, 1309 (S.D. Fla. 2016) (explaining that to "determine whether a dialer is a predictive dialing system, and therefore an ATDS, 'the primary consideration . . . is whether human intervention is required at the point in time at which the number is dialed.'"); *Glasser v. Hilton Grand Vacations Co., LLC*, 341 F. Supp. 3d 1305, 1312 (M.D. Fla. 2018) ("Since it is undisputed that calls cannot be made unless an agent clicks on the screen and forwards a telephone number to the server to be called, Defendant's 'point-to-click' system does not constitute an autodialer system under the TCPA."

In the instant action, it is undisputed that Plaintiff gave prior written consent to be contacted by HCA. Defendant's records equally confirm the use of human intervention through manual calling, critical to the ATDS analysis. Plaintiff has also produced no evidence to support the allegations that he received a prerecorded messages without consent. In fact, his Complaint alleges that he received a total of eleven (11) calls, leaving "artificial/pre-recorded messages from Defendant Hollis Cobb Associates calling on behalf of a third party," and that he never consented to the calls from HCA. (Pl.'s Compl. ¶¶ 11, 19). Based on Plaintiff's 2016 executed acknowledgment Notice, we know that he in fact provided prior express consent to be contacted through the means he now takes issue with in this action. Even so, Defendant's call logs verify that a total of five (5) calls were made, leaving Plaintiff messages regarding the Debt on his 3733 number. Separately

1042458\310046406.v1

(much less together), the evidence undermines Plaintiff's notion that Defendant violated the TCPA in its communications with him.

**E.  Any Violations of the TCPA Cannot Have Been Knowing or Willful**

Even if Plaintiff's consent to be contacted does not bar his instant TCPA claim, the Court should still grant summary judgment in favor of Defendant because HCA's conduct was neither a willful or knowing violation of the TCPA. Section 227(b)(3) of the statute requires "willful or knowing" conduct, and entails that you know you are performing an act that violates the statute. *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) (citing *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011). Thus, a violation is only willful or knowing when the defendant intended to perform the conduct, or knew that it was in fact violative of the TCPA.

First, subject to the changed standards of what defines an ATDS following *ACA Int'l* and *Facebook, Inc.*, and the lack of evidence to support his claims, Plaintiff cannot establish that Defendant called him either with knowledge that an ATDS was in use, or willfully using it, in violation of the statute. Second, after Plaintiff's July 2017 call with HCA's representative, the agent made note of the communication, that when Franklin was asked about the Debt, he hung up. In so doing, HCA further established that its system is configured to manually dial Plaintiff's number, creating a reasonable belief that it was not using an ATDS. Third, Defendant's records made note of the call being manually dialed, in conjunction with the pre-existing showing that Plaintiff had given

19

prior express consent to be called in the first place. Accordingly, Plaintiff's claim that HCA willfully and/or knowingly violated the TCPA, fails.

## CONCLUSION

Defendant's undisputed evidence shows that (i) in September of 2017, Plaintiff executed express consent to receive calls regarding any outstanding financial obligations related to services he received from Northside Hospital; (2) Plaintiff did not revoke the established prior given consent extended to HCA as an affiliate and business associate of the creditor; (3) the manual call placed to Plaintiff in July of 2017 establishes the human intervention requirement necessary to prove that HCA's system did not call or generate random or sequential numbers in its communication with Plaintiff; (4) and that Franklin has failed to present any evidence showing a statutory violation by Defendant. Accordingly, Plaintiff's claims are unfounded. He cannot satisfy his burden of proof of showing that Defendant's conduct was in violation of the TCPA, or that the conduct was willful and knowing. Thus, HCA is entitled to judgment against Plaintiff.

WHEREFORE, Defendant, HOLLIS COBB ASSOCIATES, INC., respectfully requests that for the foregoing reasons, this Court enter an Order granting Defendant's motion for summary judgment, entering judgment in favor of Defendant and against Plaintiff as to the Complaint, terminating this matter, and for any other relief this Court deems just and proper.

1042458\310046406.v1

Respectfully submitted,

HOLLIS COBB ASSOCIATES, INC.,
Defendant


By: Its Attorneys

/s/ *Paul Buschmann*
Paul Buschmann, Esq.
GA Bar No. 098430
HINSHAW & CULBERTSON LLP
One East Broward Blvd., Suite 1010
Ft. Lauderdale, FL 33301
Phone: 954-375-1134
Facsimile: 954-467-1024
e-mail: pbuschmann@hinshawlaw.com


Dated: February 7, 2022

1042458\310046406.v1

<u>**CERTIFICATE OF SERVICE**</u>

I, Paul Buschmann, hereby certify that on this 7th day of February, 2022, I electronically

filed the foregoing, **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**

**MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court by using the

CM/ECF system, which will send a notice of electronic filing to all parties of record.


<u>*/s/ Paul Buschmann*</u>
Paul Buschmann